**UNITED STATES COURT OF APPEALS**
**Tenth Circuit**
**Byron White United States Courthouse**
**1823 Stout Street**
**Denver, Colorado 80294**
**(303) 844-3157**

Patrick J. Fisher, Jr.                                                                       Elisabeth A. Shumaker
    Clerk                                                                                            Chief Deputy Clerk


October 14, 1999


**TO:**   ALL RECIPIENTS OF THE OPINION

**RE:**   97-6317 & 98-6212, *Sac & Fox Nation, et al. v. Cuomo, et al.*
          Filed on October 12, 1999

       The slip opinion filed in this case contains a typographical error on page 12, in footnote number 5, third sentence of the footnote. The citation to Calon v. Apfel incorrectly identified the year the decision was filed. The correct year is 1999. The sentence is corrected to read as follows:


       See, e.g., Calon v. Apfel, No. 98-3190, 1999 WL 415340 (10th Cir.
       April 26, 1999) (unpublished); Lohse v. Felker, No. 96-1540, 1997 WL
       441662 (10th Cir. Aug. 1, 1997) (unpublished); Andress v. Deasy, No.
       97-1041, 1997 WL 299294 (10th Cir. June 5, 1997) (unpublished).


Please make the correction to your copy of the opinion.


                                        Sincerely yours,
                                        Patrick Fisher, Clerk of Court


                                        By:   Keith Nelson
                                              Deputy Clerk

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 12 1999**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENH CIRCUIT

---

SAC & FOX NATION OF
OKLAHOMA; THE HOUSING
AUTHORITY OF THE SAC & FOX
NATION OF OKLAHOMA; CITIZEN
POTAWATOMI NATION; CITIZEN
POTAWATOMI NATION HOUSING
AUTHORITY; KICKAPOO TRIBE
OF OKLAHOMA; HOUSING
AUTHORITY OF THE KICKAPOO
TRIBE OF OKLAHOMA,

      Plaintiffs-Appellants,

    v.

ANDREW CUOMO, as Secretary of
the United States Department of
Housing and Urban Development;
DOM NESSI, as Deputy Assistant
Secretary for Native American
Programs; WAYNE SIMS,
Administrator of Southern Plains
Office of Native American Programs;
THE HOUSING AUTHORITY OF
THE ABSENTEE SHAWNEE TRIBE
OF OKLAHOMA,

      Defendants-Appellees.

Nos. 97-6317
and 98-6212

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. No. CV-97-791-M)

Michael Minnis, Michael Minnis & Associates, P.C., Oklahoma City, Oklahoma, and Nathan H. Young, III, Tahlequah, Oklahoma (David McCullough of Michael Minnis & Associates, P.C., Oklahoma City, Oklahoma, with them on the briefs), for Appellants.

Arvo Q. Mikkanen, Assistant United States Attorney, Oklahoma City, Oklahoma (Patrick M. Ryan, United States Attorney, Oklahoma City, Oklahoma, with him on the briefs), for Federal Appellees.

F. Browning Pipestem (Dena L. Silliman with him on the briefs), F. Browning Pipestem & Associates, Norman, Oklahoma, for Appellee Absentee Shawnee Housing Authority.

Before **ANDERSON, McWILLIAMS,** and **MURPHY,** Circuit Judges.

**ANDERSON**, Circuit Judge.


This case involves a jurisdictional dispute between, on the one side, three

Indian Tribes in Oklahoma (the "Three Tribes")[1] and, on the other, the Housing

Authority of a fourth tribe, and the officials in the Department of Housing and

Urban Development ("HUD") who allocate Indian-housing funds in Oklahoma.

The Three Tribes sued, seeking declaratory and injunctive relief against HUD and

---

[1]The plaintiff tribes are the Sac and Fox Nation Indian Tribe of Oklahoma, the Kickapoo Tribe of Oklahoma, and the Citizen Potowatomi Nation. While the housing authority of each tribe is also a named plaintiff, no one suggests that any issues are peculiar to them. This court will thus refer simply to "the Three Tribes."

the Absentee Shawnee Housing Authority (ASHA). They complained that HUD has been funding ASHA housing projects that are outside ASHA's proper area of operation, and instead in theirs. They asked the district court to enjoin ASHA from conducting, and HUD from funding, activities outside its legal area of operation, and to order defendants to transfer to the Three Tribes all HUD projects in each of their respective jurisdictions.

The Three Tribes moved unsuccessfully for a preliminary injunction and immediately appealed its denial to this court. They also moved unsuccessfully to have the assigned district judge disqualify herself. Before we heard the interlocutory appeal, the district court dismissed the complaint on the alternative grounds of lack of federal-question jurisdiction and inability to join an indispensable party, the Absentee Shawnee Tribe ("AST"). The Three Tribes appealed that dismissal, and this court consolidated the two appeals. We have jurisdiction under 28 U.S.C. §§ 1291, 1292.

Plaintiffs alleged four claims in their complaint, each seeking slightly different injunctive relief: (1) that against ASHA; (2) that requiring HUD to transfer existing projects to the Three Tribes; (3) that barring HUD from allocating future operating funds to ASHA for existing projects; and (4) that barring HUD from allocating future funds to ASHA to develop new housing. Because none of these claims pose a substantial federal question, we affirm the

dismissal of the complaint. We also dismiss as moot the preliminary injunction appeal, vacate the dismissal for failure to join an indispensable party, and affirm the denial of the motion to disqualify the assigned judge.

## BACKGROUND

The district court dismissed this case before any discovery, and the facts are thus scantily developed. We take all factual allegations in the complaint as true. See Wenz v. Memery Crystal, 55 F.3d 1503, 1505 (10th Cir. 1995).

The Three Tribes each have trust lands and former reservation areas in parts of four counties in central Oklahoma. The AST has no former reservation in Oklahoma, but the United States holds some land in one of the counties in trust for it. The AST sponsors and controls ASHA, but ASHA is technically an agency of the State of Oklahoma, created by the Oklahoma Housing Authorities Act ("OHAA"). See Okla. Stat. Ann. tit. 63, § 1507; see generally id. §§ 1051–1084. The federal defendants ("HUD")[2] allocate low income housing funds to Indian Tribes and Indian Housing Authorities ("IHAs") in Oklahoma.

Over the Three Tribes' protests, HUD has been, for years, funding ASHA's construction and operation of housing projects on lands located in the Three

---

[2]The federal defendants are HUD's Secretary, its Deputy Assistant Secretary for Native American Programs, and the Administrator of its Southern Plains Office of Native American Programs.

Tribes' former reservation areas and not held in trust for the AST. The Three Tribes claim that federal law limits an IHA's area of operation in Oklahoma to its sponsoring tribe's former reservation area or trust lands.

The Three Tribes filed a complaint for injunctive and declaratory relief in May 1997. They also moved for a preliminary injunction barring ASHA from continuing, and HUD from funding, operations outside ASHA's legal area of operation. The court set a hearing on the preliminary injunction motion, but later struck the hearing "to be re-set . . . after June 26, 1997." ASHA then moved to dismiss. It argued that the court lacked subject matter jurisdiction, as the case turned not on any federal question but on the state-law question of how to define ASHA's area of operation, and that the AST was a necessary party, unable to be joined because of its sovereign immunity.

The court denied the preliminary injunction on July 7, without having rescheduled the stricken hearing. It also *sua sponte* stayed all further proceedings pending resolution of ASHA's motion to dismiss. The Three Tribes, complaining of their inability to conduct discovery, moved the court to lift the stay or, in the alternative, to lift it for the limited purpose of considering a motion to disqualify the assigned judge. The court did the latter, considered the motion, and denied it.

In September 1997, the Three Tribes appealed the denial of the preliminary injunction. After this court denied their motions to expedite the appeal and to enter an injunction pending appeal, the parties filed their briefs.

The district court, meanwhile, had not acted on ASHA's motion to dismiss. In February 1998 the Three Tribes notified the court that it had been pending for over 90 days. Three weeks later, they petitioned this court for a writ of mandamus directing the district court to lift the stay, recuse the assigned judge, and require the new judge to rule on the motion to dismiss. Six days later, the district court granted the motion to dismiss. This court then denied the mandamus petition as moot. After a dispute over whether the order granting ASHA's motion to dismiss had been final, the Three Tribes appealed that order. We consolidated the two appeals.

## DISCUSSION

### I. Subject-Matter Jurisdiction

We review de novo a dismissal under Fed. R. Civ. P. 12(b)(1) for lack of subject-matter jurisdiction. See Painter v. Shalala, 97 F.3d 1351, 1355 (10th Cir. 1996). We accept as true the complaint's uncontroverted factual allegations when, as in this case, the court held no evidentiary hearing. See Wenz, 55 F.3d at 1505.

The only asserted basis for subject-matter jurisdiction is the presence of a federal question.[3] A plaintiff creates federal-question jurisdiction by means of a "well-pleaded complaint establish[ing] either that federal law creates the cause of action or that the plaintiff's right to relief . . . depends on resolution of a substantial question of federal law." Franchise Tax Bd. of Calif. v. Construction Laborers Vacation Trust for So. Calif., 463 U.S. 1, 27-28 (1983). "[T]he party invoking federal jurisdiction bears the burden of proof." Marcus v. Kansas, 170 F.3d 1305, 1309 (10th Cir. 1999) (quoting Penteco Corp. v. Union Gas Sys., Inc., 929 F.2d 1519, 1521 (10th Cir. 1991)). Moreover, federal question jurisdiction must appear on the face of the complaint and "[t]he complaint must identify the statutory or constitutional provision under which the claim arises, and allege sufficient facts to show that the case is one arising under federal law." Martinez v. United States Olympic Comm., 802 F.2d 1275, 1280 (10th Cir. 1986).

In dismissing the complaint for lack of jurisdiction, the district court held:

---

[3]The Three Tribes alleged jurisdiction under 28 U.S.C. §§ 1331 and 1362. The former is the federal-question jurisdictional statute, while the latter affords jurisdiction of suits by Indian Tribes that involve federal questions. Congress enacted § 1362 before it had amended § 1331 to eliminate the amount-in-controversy requirement. Its purpose was to exempt Indian Tribes from that requirement, and it is well established that invoking § 1362 does not change a plaintiff tribe's duty to show that its complaint raises a substantial federal question. See e.g., Western Shoshone Bus. Council v. Babbitt, 1 F.3d 1052, 1058-59 (10th Cir. 1993).

plaintiffs do not plead any constitutional provision, federal law or treaty upon which federal question jurisdiction could rest. To the contrary, the only law at issue appears to be the [OHAA], since the gist of plaintiffs' complaint is that ASHA is allegedly developing low income homes outside its "area of operation" as set out in the [OHAA].

Order at 9-10, Appellants' App. (No. 98-6212) at 40-41. We agree.

We first affirm the dismissal of the claims against ASHA, as those claims clearly present no federal question. The Three Tribes suggest no cause of action against ASHA that arises under or depends on the construction of any federal law. The Three Tribes' brief on appeal virtually concedes that only their claims against the federal defendants could conceivably pose a federal question.

We also hold that plaintiffs' complaint fails to articulate a substantial federal question with respect to those federal defendants. Only two paragraphs in the complaint even mention HUD's conduct:

24.     Every housing unit operated by the ASHA must be approved and funded by HUD.

25.     Defendant Secretary of HUD and Defendant Southern Plains Office of Native American Programs by and through Defendant Sims have been continually advised of the ASHA's illegal encroachments on other tribes' areas, but have refused to halt the encroachments, and if not enjoined, will continue to allow these encroachments and allocate federal funding to the ASHA based thereon.

Complaint at ¶¶ 24, 25, Appellants' App. (No. 97-6317) at 5. Noticeably absent from those paragraphs are any references to federal laws, regulations, treaties, etc.

which plaintiffs claim HUD has violated, or even any general description of how HUD is allegedly responsible for the "encroachments," not to mention how any claimed violation of any law or regulation could confer federal question jurisdiction.[4]

In response to ASHA's motion to dismiss in the district court, grounded in part on the lack of a federal question, plaintiffs only *specifically* referred to those two paragraphs in the complaint. See Pls.' Br. in Opp'n to the ASHA Mot. to Dismiss at 5 n.13, Appellants' App. at 5. They supplemented that reference with general statements such as "[a]llocation of federal funding by the Federal Defendants is certainly a federal question" and "[t]he proper administration of a federal program is obviously a controversy arising under federal law." Id. at 5. Again, plaintiffs directed the district court to no specific federal law or regulation which they claimed was violated or which conferred federal question jurisdiction, nor did they articulate even in general terms how HUD could be liable for the claimed illegal activities of ASHA.

---

[4]Perhaps it could be argued that plaintiffs' complaint invokes the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701-706. But plaintiffs' complaint never mentions the APA, and at oral argument before this court plaintiffs' counsel, when asked directly whether he could have brought an action under the APA, specifically stated that he did not believe he could. Thus, it seems clear that plaintiffs did not intend their complaint to allege a cause of action under the APA.

While plaintiffs' brief to this court on appeal attempts, for the first time, to explain how paragraphs 12 through 27 of the complaint also allege violations of federal regulations, in fact the clear, and only, focus of those paragraphs is on ASHA's "operational/jurisdictional areas" as defined by state law, and on ASHA's claimed "encroachments" on plaintiffs' "operational/jurisdictional areas," also as defined by state law. It is therefore entirely understandable that the district court concluded that plaintiffs' complaint articulated no federal question, even against the federal defendants. It is only in a footnote that, finally, in their appellate brief, plaintiffs reference the particular federal regulations they claim the federal defendants have violated. See Appellants' Br. at 10-11 n.31. When asked the direct question at oral argument, plaintiffs' counsel asserted that the specific federal regulation allegedly violated is 24 C.F.R. § 1000.302, the regulation which made its first belated appearance in footnote 31 of plaintiffs' appellate brief.

We acknowledge that, in general, we apply liberal rules of pleading, particularly where a party proceeds pro se. Additionally, pleadings may be amended, including on appeal, to cure defective allegations of jurisdiction. See 28 U.S.C. § 1653. However, in this case, plaintiffs were represented by counsel. No formal amendment was ever sought. Even after a motion to dismiss had been filed in district court, specifically alleging that plaintiffs failed to plead the

existence of a federal question, plaintiffs relied upon vague general statements about federal funding by HUD. But the fact that federal funds are involved is, by itself, insufficient to establish the existence of a federal question. See Eastern Shoshone Tribe v. Northern Arapaho Tribe, 926 F. Supp. 1024, 1031 (D. Wyo. 1996); see also United States ex. rel. Gen. Rock & Sand Corp. v. Chuska Dev. Corp., 55 F.3d 1491 (10th Cir. 1995). It was not until after the district court dismissed their complaint that plaintiffs finally decided what they needed to argue to avoid such dismissal and fleshed out the nature of their asserted federal question.

We decline to construe plaintiffs' appellate brief as an amendment of their complaint. While we have permitted such appellate amendment in one prior case, Martinez, that case is readily distinguishable from this one. In Martinez, plaintiff's complaint alleged that "federal questions are involved," but failed to particularly allege any issue regarding the validity, construction or application of any federal statute. Martinez, 802 F.2d at 1280. However, in oral argument before the district court on a motion to dismiss, plaintiff argued that a specific federal statute created a private cause of action supporting her complaint. Defendants, thus, were on notice of the jurisdictional allegations and had an opportunity to respond both before the district court and in their appellate brief. After noting that "these allegations should have appeared in [plaintiff's]

complaint," we treated the complaint, for purposes of the appeal, as "having been amended to include them." Id. In Martinez, therefore, the specific federal cause of action was identified and argued to the *district court*, as well as on appeal. Here, the specifics of plaintiffs' asserted federal cause of action were not argued until on appeal and, even then, only in the most vague and opaque fashion and for the very first time in a footnote in their reply brief.

Accordingly, Martinez does not establish any general rule about appellate amendment of pleadings to satisfy jurisdictional requirements; rather, it represents a narrow, case-specific, exception to our general rules of pleading.[5] To interpret Martinez any other way would unfairly prejudice the federal defendants because they would have no practical opportunity to respond to the jurisdictional allegations made by the Three Tribes. Moreover, it would unfairly burden the district court to expect that court to independently identify the correct federal jurisdictional basis or risk reversal on appeal.

---

[5]Indeed, this court has never relied upon Martinez for appellate amendment of jurisdictionally deficient complaints. The few cases that have cited Martinez have quoted the Martinez language we quote, supra, concerning the requirement that the complaint identify the statutory or constitutional basis for federal jurisdiction. See, e.g., Calon v. Apfel, No. 98-3190, 1999 WL 415340 (10th Cir. April 26, 1999) (unpublished); Lohse v. Felker, No. 96-1540, 1997 WL 441662 (10th Cir. Aug. 1, 1997) (unpublished); Andress v. Deasy, No. 97-1041, 1997 WL 299294 (10th Cir. June 5, 1997) (unpublished). This provides further support for a narrow construction of Martinez.

In sum, the district court in this case correctly dismissed plaintiffs' complaint for failing to establish the existence of federal-question jurisdiction. "[W]hen the question to be considered is one involving the jurisdiction of a federal court, jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998). No such affirmative showing was made here.

## II.  Preliminary Injunction

This consolidated appeal includes the Three Tribes' interlocutory appeal from the order declining to preliminarily enjoin ASHA and HUD from conducting or funding operations in the disputed area. Our disposition of this case renders that appeal moot.

## III.  Motion to Disqualify

The Three Tribes also appeal the denial of their motion to disqualify the assigned judge on the grounds of an "appearance of bias." See 28 U.S.C. § 455(a). We generally review such denials for an abuse of discretion. See United States v. Lowe, 106 F.3d 1498, 1504 (10th Cir. 1997). However, because the judge in this case did not create a record or document her decision not to

recuse, we review the denial de novo.  See United States v. Greenspan, 26 F.3d 1001, 1007 (10th Cir. 1994) (noting that a judge "must document the reasons for his or her decision [on recusal] so that the decision may be reviewed, if necessary, by an appellate court").  We affirm the court's denial in this case.

A federal judge must recuse herself "in any proceeding in which [her] impartiality might be reasonably questioned."  28 U.S.C. § 455(a).  The court must decide "whether a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality."  United States v. Cooley, 1 F.3d 985, 993 (10th Cir. 1993) (quotations omitted).  The Three Tribes argue the district court was biased (1) because of her past service as United States Attorney for the Western District of Oklahoma at a time when that office represented the Bureau of Indian Affairs in a particular case; and (2) because of the timing and manner of her rulings in this case.

We reject the first argument, since the Three Tribes expressly disavow any knowledge that the district court judge personally participated in any way in the particular prior case.  See United States v. Gipson, 835 F.2d 1323, 1326 (10th Cir. 1988).  We reject their second asserted ground for recusal, noting that, as the Tribes concede, merely adverse rulings can almost never constitute grounds for disqualification, see Cooley, 1 F.3d at 993-94, and the Tribes cite no authority for their claim that the time and manner of her rulings creates a reasonable doubt

about impartiality, absent any other indicia of bias or partiality. Nothing in the district court's rulings in this case provides a reasonable basis from which to infer partiality. The assigned judge properly denied the motion to disqualify.

## CONCLUSION

For the foregoing reasons, we AFFIRM the dismissal of the complaint for lack of federal-question jurisdiction, we DISMISS AS MOOT the appeal from the order denying a preliminary injunction, we AFFIRM the denial of the motion to disqualify, and we VACATE the district court's dismissal for failure to join an indispensable party.